**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 92-4213
_____

WILLIAM ROBERT PARKER,

Petitioner-Appellant,

versus

WAYNE SCOTT,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Texas
(2:89-CV-194)
_____
(March 7, 1995)

Before SMITH and EMILIO M. GARZA, Circuit Judges, and BERRIGAN,
District Judge.[*]

EMILIO M. GARZA, Circuit Judge:[*]

William Robert Parker was found guilty of murder by a Texas
jury.  Parker filed a petition for writ of habeas corpus under 28
U.S.C. § 2254 (1988), which the district court dismissed.  Parker
appeals the dismissal of his habeas petition; we affirm.

I

A Texas jury convicted William Robert ("Billy Bob") Parker of

_____

[*]     District Judge for the Eastern District of Louisiana, sitting by
designation.

[*]     Local Rule 47.5.1 provides:  "The publication of opinions that have
no precedential value and merely decide particular cases on the basis of well-
settled principles of law imposes needless expense on the public and burdens on
the legal profession."  Pursuant to that Rule, the Court has determined that this
opinion should not be published.

murdering his brother-in-law, Shane Boyd Caskey, and recommended that he be sentenced to life imprisonment. After the sentencing recommendation, but before the court announced Parker's sentence, Parker's attorney requested that the court conduct a hearing to determine Parker's competency to stand trial. Months later, a separate jury found that Parker was competent when he stood trial. The Court then sentenced Parker to life imprisonment.

Parker appealed to the Texas Court of Appeals, which affirmed his conviction. The Texas Court of Criminal Appeals denied his petition for discretionary review. Each of Parker's three state habeas petitions were also denied. Having exhausted his state remedies, Parker filed a federal habeas petition under 28 U.S.C. § 2254. In his petition, Parker attacked both the trial court's jury charge and his competency hearing on several grounds. The district court dismissed the petition. Parker appeals, claiming that the district court improperly held that the following did not constitute due process violations: (1) the trial court's inclusion of the words "without justification" in its jury instruction on murder, (2) the trial court's inclusion of "serious bodily injury" language in its instruction on aggravated assault, (3) the trial court's submitting a "fundamentally defective" self-defense instruction to the jury, (4) the trial court's submitting a jury charge that was flawed as a whole and in the context of the trial, (5) and the trial court's holding that a prejudicial question posed by the State during Parker's competency hearing was harmless error.

-2-

"We are limited in habeas proceedings to assuring that the accused has been afforded the constitutional rights due to him." *Ellis v. Collins*, 956 F.2d 76, 78 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1285, 117 L. Ed. 2d 510 (1992). "When reviewing the habeas proceedings of petitioners in state custody, we must accord a presumption of correctness to state court findings of facts." *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir.) (citing § 2254), *cert. denied*, ___ U.S. ___, 115 S. Ct. 436, 130 L. Ed. 2d 348 (1994). We review the district court's findings of fact in a § 2254 case for clear error, but decide any issues of law de novo. *Id.*

A

A federal court reviewing a collateral attack on a state court's jury charge must consider not only whether the contested instruction was undesirable or erroneous, but also whether it "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37, 52 L. Ed. 2d 203 (1977); *accord Kinnamon v. Scott*, 33 F.3d 462, 465 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 660, ___ L. Ed. 2d ___ (1994).

Parker claims that the district court erred in holding that the trial court's instruction on murder in Paragraph I of the jury charge did not deny him due process. In Paragraph I, the trial court instructed the jury that: "A person commits the offense of murder if he intentionally or knowingly causes the death of an

individual without justification." Parker alleges that at the time of the offense, the relevant definition of murder in Texas did not include the "without justification" requirement. The district court held that "this added phrase increased the burden on the State because it required that the State prove that the offense occurred without justification. As a result, Parker was not denied a fundamentally unfair trial through the giving of this instruction."

Because there is not the least likelihood that an instruction that did not contain the words "without justification" would have resulted in Parker's exoneration of murder, the additional words did not prejudice him. *See Skelton v. Whitley*, 950 F.2d 1037, 1046 (5th Cir.) (finding no prejudice to defendant challenging instruction on murder where there was "not the least likelihood that a different . . . instruction would have resulted in his exoneration of murder"), *cert. denied*, ___ U.S. ___, 113 S. Ct. 102, 121 L. Ed. 2d 61 (1992). Thus, the district court did not err in holding that the trial court's instruction did not deprive Parker of his right to due process.

Parker also contends that the district court erred in holding that the trial court's instruction on aggravated assault in Paragraph VII of the jury charge did not deprive him of his right to due process. Paragraph VII stated:

> You are further instructed that before a person can be guilty of murder or voluntary manslaughter under the indictment, he must have intentionally or knowingly caused the death, or he must have intended to cause serious bodily injury and commited [sic] an act clearly dangerous to human life that caused the death of

-4-

deceased. Unless you find beyond a reasonable doubt that defendant is guilt [sic] of murder or voluntary manslaughter or you have a reasonable doubt thereof, you will next consider whether he is guilty of aggravated assault.

Parker claims that this instruction allowed the jury to find him guilty of murder without finding that he intended to kill the deceased, an alternative theory of murder not contained in his indictment. The district court held that the instructions were not erroneous when taken as a whole, and that any error in Paragraph VII was invited error.

Parker failed to object to the "serious bodily injury" language in Paragraph VII at the trial. Our review is thus limited to plain error. *See United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir. 1991) ("Where no objection is made [to a jury instruction], review is normally limited to plain error."). "Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice." *United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994). "[C]ourts have held that it is plain error to give instructions that permit a jury to convict for a crime not charged in the indictment because a court may not substantially amend an indictment through its jury instructions." *Id.* (citing *Mize*, 756 F.2d at 355; *Ricaldy v. Procunier*, 736 F.2d 203, 207 (5th Cir 1984)).

Our review is also limited by the fact that Parker himself requested the instruction. Although Parker did not submit an instruction on aggravated assault along with his other requested

instructions, the trial court noted: "I would make, for the record, the Defendant had requested the charge on aggravated assault, which charge was approved and presented by the Court. . . . All of the Defendant's request [sic] were in writing and filed except the one as to aggravated assault . . . ."

The invited error doctrine, under which a party may not complain of error invited by that party, applies to allegedly erroneous jury instructions. *Baytank*, 934 F.2d at 607. While we have often refused to consider complaints of erroneous jury instructions under the doctrine of invited error,[1] however, the language of two recent cases has suggested the possibility of a limitation on the doctrine's preclusive effect as applied to such complaints.

In *United States v. Puig-Infante*, 19 F.3d 929 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 180, 130 L. Ed. 2d 115 (1994), the defendant complained on appeal of the absence of a supplemental instruction in the jury charge even though she had objected at trial to the inclusion of the instruction. *Id.* at 941. We held that because the defendant "did not request the instruction, and indeed prevented the court from curing any inadequacy in the initial charge, she failed to preserve the issue for appeal. Her objection to the instruction's inclusion bars her

_____

[1]    *See*, *e.g.*, *United States v. Monk*, 15 F.3d 25, 27 (5th Cir. 1994) (declining to consider argument of erroneous jury instruction where appellant had requested the instruction); *United States v. Gray*, 626 F.2d 494, 501 (5th Cir. 1980) ("To avoid being foreclosed by the invited error doctrine, we conclude that the party who invites the error must inform the court that he no longer seeks the challenged instruction."); *United States v. Easterly*, 444 F.2d 1236, 1240 (5th Cir. 1971) (holding that appellant would "not be heard to complain" of the inclusion in a jury instruction of language he had "specifically requested").

-6-

present contention under the doctrine of invited error." *Id.* We concluded, however, that: "Our review of this claim, therefore, is limited to plain error at the most." *Id.*

In *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir. 1991), we applied the invited error doctrine to "the precise question of a jury instruction allowing a conviction for a crime not charged in the indictment." *Id.* In *Baytank*, as here, the defendant "not only failed to object to the allegedly overbroad portion of the court's charge, but that portion of the charge is the precise language requested by the [defendant]." *Id.* at 606. The *Baytank* court held that the invited error doctrine does apply in such a situation, "at least where it does not appear that a substantial miscarriage of justice would result from its application." *Id.* at 607.

We need not test the limits of the invited error doctrine, however, because consideration of Parker's claim is barred by its loosest application, as well as by Parker's failure to object at trial. Taken as a whole, the jury instructions did not permit the jury to find Parker guilty of murder without finding that he had intended to kill the deceased, and thus were not so clearly erroneous as to result in the likelihood of a grave miscarriage of justice. The proper grounds for a finding of murder were stated or implied repeatedly in the charge.[2] Also, the charge instructed the

---

[2] For example, Paragraph I instructed the jury that: "A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, without justification." Paragraph IV stated: "Now, if you find from the evidence beyond a reasonable doubt that . . . [Parker] did intentionally or knowingly cause the death of an individual . . . , then you will find the

jury in at least two places that if they found that Parker had not intended to kill the deceased, they should find Parker guilty of aggravated assault instead of murder.[3]   Thus, the aggravated assault instruction in Paragraph VII did not render the instructions on murder taken as a whole plainly erroneous.[4]

We need not address in detail Parker's claim that the district court improperly held that any error in the self-defense instruction contained in Paragraph XIV of the jury charge was invited error.   Parker argues that the "fundamental error in the Jury Charge on self-defense" was not invited, but does not identify the error.   Without this information, we are unable to review whether Parker, after requesting Paragraph XIV, made an objection to the instruction that was sufficient to preserve the issue for appeal.

Parker's final jury instruction claim is that we must assess

_____

defendant guilty of murder, as charged in the indictment, and so say your verdict."

[3]    Paragraph VIII instructed that: "A person commits an assault if he intentionally or knowingly causes bodily injury to another person."  Paragraph X stated: "Now, if you find from the evidence beyond a reasonable doubt that . . . Parker intentionaly [sic] or knowingly caused bodily injury . . . , but you further find . . . that William Robert Parker did not intend to kill Shane Boyd Caskey then you will find the defendant guilty of aggravated assault.

[4]    It is also worth noting that in closing arguments, the State made no attempt to exploit the error in Paragraph VII.  In fact, the State made repeated references to the fact that the jury would have to find an intent to kill to find Parker guilty of murder.  For example, the State opened its closing argument by reminding the jury: "Look at your definitions in this Charge.  It gives you the charge about murder.   The intention is that he knowingly and intentionally murdered or killed Shane Boyd Caskey."  The State later repeated: "There is only one verdict that you can bring in this case.  It is murder.  It is murder. Knowingly and intentionally killing Shane Boyd Caskey."  The State concluded: "I say the facts in the case is [sic] before you say it is murder and you took an oath to do your duty, and I believe your duty is to return a verdict of knowingly and intentionally taking the life. Read your definitions.  Thank you very much."

-8-

whether, "taking all of the uninvited errors and reviewing them in light of the record as a whole, and as to what the Jury understood and didn't understand," the jury charge was "an overall proper charge." "To determine whether there was error, this Court looks at `the entire charge in the context of the trial including arguments made to the jury.'" *United States v. Willis*, 38 F.3d 170, 179 (5th Cir. 1994). However, we have already held that any errors in Paragraphs I and VII, invited or not, did not deprive Parker of his right to due process, that the State made no attempt to exploit any errors in Paragraphs I and VII,[5] and that Parker did not properly present his claim as to Paragraph XIV. We cannot conclude that the jury charge, taken as a whole and in the context of the entire trial, contained reversible error.

B

Next, Parker claims that the district court erred in holding that the State's reference to Parker's trial during his competency hearing did not deprive him of his right to due process. During the competency hearing, while examining a doctor, the District Attorney began asking the following question: "Doctor, one who has been, assume this to be true, just convicted of murder, with a substantial punishment would))" The district court held that: "The single statement by the prosecutor, while error, was not such as to cause the denial of a fundamentally fair trial or the violation of Parker's rights under the Due Process Clause."

Over the course of the competency hearing, the jury heard on

---

[5]    *See supra* note 4.

many occasions that Parker had been accused of murdering his brother-in-law. The jury also heard that Parker stood trial for murder, and that the trial was over. The jury even heard testimony that the trial had gone to the punishment phase, and that Parker was still in jail after the trial was over. Thus, it is highly unlikely that the District Attorney's hypothetical prejudiced Parker in any way.

Any prejudice that did result from the District Attorney's hypothetical was cured by the trial court's immediately instructing the jury to disregard the question.[6] "A prejudicial remark may be rendered harmless by curative instructions to the jury." *United States v. Nguyen*, 28 F.3d 477, 483 (5th Cir. 1994) (holding prejudice from witness statement cured by a "prompt and strong" curative instruction). Thus, the district court properly held that the District Attorney's posing a hypothesis about a person convicted of "murder, with a substantial punishment," did not deprive Parker of his right to due process.

III

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief.

---

[6] The court stated:
Any questions in regard to the defendant being sentenced is [sic] going to be struck from the record and the jurors are hereby instructed and so ordered to disregard any questions that may have been made in regards to any sentencing, any sentence that may have been received by the defendant in regards to this proceeding.